IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.             ) | 02: 04cr313-02 |
| ) | |
| ) | |
| GREGORY ARMSTRONG    ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

September 18, 2006

On August 11, 2006, the Court reopened the record in this matter for the limited purpose of conducting an evidentiary hearing on the issue of whether there was probable cause for the arrest of Defendant, Gregory Armstrong, on December 6, 2004. All parties were represented by counsel who presented and argued the issues skillfully and effectively.

Based on the testimony and evidence presented at the evidentiary hearing, and the applicable law, the Court finds that there was probable cause to arrest Defendant Gregory Armstrong.

**FACTUAL BACKGROUND**

The facts of the case, which are largely undisputed, have been amply set forth in the previous opinions rendered by the Court in this case.[1] Therefore, the Court merely

---

[1] *See Memorandum Opinion and Order of Court dated February 8, 2006*, and *Memorandum Opinion and Order of Court dated June 29, 2006*, in which the Court instructed that the record would be reopened for the limited purpose of conducting a supplemental evidentiary hearing on the issue of whether there was probable cause to arrest this Defendant. The facts as found by the Court in the February 8, 2006, Memorandum Opinion are hereby incorporated by reference and will not be restated in their entirety.

provides an abridged summary of facts for the purpose of this Opinion.

On October 13 and 14, 2005, the Court held a non-jury trial on the pending charges against Defendant, Gregory Armstrong ("Armstrong"). On February 8, 2006, the Court issued an extensive Memorandum Opinion and Order of Court in which, after reflecting upon all the evidence and testimony presented at the non-jury trial, the Court found and ruled that Armstrong was guilty as charged in the indictment of one count of conspiracy to distribute and possess with intent to distribute five (5) kilograms or more of cocaine, in violation of Title 21, United States Code, section 846; and one count of attempt to possess with intent to distribute five (5) kilograms or more of cocaine, in violation of Title 21, United States Code, section 846.[2]

On February 14, 2006, in open Court, with Armstrong and his counsel present, the Court read the guilty verdict into the record.

On March 15, 2006, Armstrong filed a Motion For A New Trial pursuant to Federal Rule of Criminal Procedure 33, in which he requested, *inter alia,* that the Court vacate the judgment of February 14, 2006, and "take additional testimony on the issue of the defendant's assertion that he was arrested without probable cause and his cell phone, money and documents were seized in violation of his rights as guaranteed by the Fourth Amendment to the United States Constitution." Mot. at 1. Distilled to its essence, Armstrong, through counsel, argued that his attorney "failed to raise an obvious Fourth Amendment issue which is a violation of the

---

[2] A complete narrative of the evidence and testimony presented at the non-jury trial is set forth in the Memorandum Opinion and Order of Court filed on February 8, 2006.

defendant's Sixth Amendment right to effective assistance of counsel." *Id.* at ¶ 3. Additionally, Armstrong contended that because this case was tried without a jury, Federal Rule of Criminal Procedure 33 allowed the Court to "take additional testimony and decide the Fourth Amendment issue and if decided in the defendant's favor re-evaluate the trial evidence and enter a new judgment." *Id*. at ¶ 4.   The government strongly opposed the Motion.

By Memorandum Opinion and Order of Court dated June 29, 2006, the Court granted Armstrong's motion in part and ordered the record to be reopened for the limited purpose of conducting an evidentiary hearing on the issue of whether there was probable cause to arrest Armstrong.

On August 11, 2006, the Court conducted an evidentiary hearing on the Motion to Suppress.  The following witnesses testified on behalf of the government:  Agent Francis Speranza of the Pennsylvania Office of Attorney General, Narcotics Division; Officer Mark Steele of the City of McKeesport Police Department; Trooper David Lieberum of the Pennsylvania State Police; Special Agent Thomas Jackson of the United States Drug Enforcement Agency;[3] and Agent Brenda Sawyer of the Pennsylvania Office of Attorney General.

---

[3] As a result of the Court's determination that the police had probable cause to arrest Armstrong, it is not necessary to discuss Special Agent Jackson's testimony. Distilled to its essence, Special Agent Jackson testified regarding facts underlying the doctrines of independent source and inevitable discovery which are not relevant to the instant issue.

## DISCUSSION

Probable cause to arrest exists when the facts and circumstances within the arresting officers' knowledge "are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *United States v. Cruz*, 910 F.3d 1072, 1076 (3d Cir. 1990), *cert. denied*, 498 U.S. 1039 (1991). *See also Beck v. Ohio,* 379 U.S. 89 (1964); *United States v. Belle,* 593 F.2d 487, 497 n. 15 (3d Cir. 1979), *cert. denied*, 442 U.S. 911 (1979). "While a 'bare suspicion' of criminal activity is not sufficient to establish probable cause, neither are police required to have enough evidence to justify a conviction before they make a warrantless arrest." *See United States v. Morales*, 923 F.2d 621, 624 (8th Cir. 1991).

Even if actions and occurrences, taken in isolation, are "susceptible of an innocent explanation," "[t]he succession of superficially innocent events [may] proceed to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one." *Belle,* 593 F.3d at 489-99 (*quoting United States v. Patterson*, 492 F.2d 995, 997 (9th Cir.), *cert. denied,* 419 U.S. 846 (1974)).

An officer's knowledge of a prior arrest and conviction for drug trafficking, and/or association to a location, may factor into his finding of probable cause. *See United States v. Cruz*, 910 F.2d 1072, 1077 (3d Cir. 1990).

While, mere presence at a given location cannot in and of itself constitute probable cause to arrest, *Ybarra v. Illinois*, 444 U.S. 85, 90 (1979), a purposeful coordination of activity

4

may factor into an officer's finding of probable cause. *United States v. Butts,* 704 F.2d 701 (3rd Cir. 1983).

Armstrong argues that he was arrested without probable cause and that his cell phone(s), money and documents were therefore seized in violation of his rights as guaranteed by the Fourth Amendment to the United States Constitution.  Through counsel, Defendant concedes that he was present at or near the scene of a crime, however, he argues that this is not sufficient for his arrest because all he did was "drive a truck, park a truck, go into his house, come out of his house, and was arrested."

After an in-depth review of the respective positions of the parties, the evidentiary suppression hearing record, and applicable case law, the Court finds that there were sufficient facts known by the police at the time that Armstrong was arrested that support a reasonable belief that he was involved in a felony criminal drug-related transaction.

A.	*Testimony of Agent Francis Speranza*

Agent Francis Speranza ("Speranza") of the Pennsylvania Office of Attorney General testified that he was not present on the scene the day Armstrong was arrested, December 6, 2004.  However, a few days prior to that, he had been contacted by an agent of the Drug Enforcement Agency ("DEA") in California who informed him that a suspicious package was coming into Pittsburgh and the agent asked Speranza if he would accept the package.  The package was being shipped by Federal Express with overnight delivery ($96.00 paid in cash) on Saturday, December 4, 2004, with no delivery signature required.  The intended recipient's

5

address was listed as 1716 Sumac Street, McKeesport. Pennsylvania. The sender's address in San Diego was checked and found to be non-existent and the call back phone number was to a FAX machine. Speranza also knew that San Diego was known as a source city for cocaine throughout the United States.

Speranza learned from Trooper Lieberum who lived across the street that the house at 1716 Sumac Street had been vacant for quite some time; that the named addressee did not live there; that Armstrong had approached Trooper Lieberum about purchasing the house at 1716 Sumac Street; and that Trooper Lieberum had shown Armstrong through the vacant house at an earlier time.

Speranza personally knew that Cora Ashley also lived across the street from 1716 Sumac Street, and he had been informed by his "intelligence" that Cora Ashley would store drugs and money for Armstrong at her house, and that she was a "mule" for Armstrong. Agent Brenda Sawyer ("Sawyer") told him that Cora Ashley and Armstrong were cousins.

Speranza also had personal knowledge of Armstrong. He knew that Armstrong had gone to prison for a cocaine violation and had been released some time before 2004.[4] Speranza knew that Armstrong had a reputation for dealing cocaine and that he had the ability to buy multi-kilograms of cocaine. He also knew of Armstrong's extravagant lifestyle including expensive cars.

---

[4] Speranza also testified that some years ago, he had arranged for controlled buys of cocaine from Armstrong; however the "buyers" would not cooperate and as a result, Armstrong was not charged.

Speranza and Sawyer went to the Federal Express facility to see and assess the subject package. While there, Speranza and Sawyer saw a second package which looked almost identical to the subject package: the two boxes were the same size, shape and color, both originated from San Diego, and both were being shipped to McKeesport, Pennsylvania, although to different addresses.

The recipient address on the second box was 1315 Maple Street, McKeesport, Pennsylvania. Sawyer knew that the Maple Street address had been associated with Sharese Truesdale, who had 2-3 children with Armstrong. Upon further investigation, it was discovered that Sharese Truesdale had since moved from the Maple Street address and that house was likewise vacant. At the time he prepared the search warrant affidavits, it was his belief that the house at 1315 Maple Street was unoccupied.

From the information which the police had developed, Speranza testified that Armstrong became a significant suspect which information he and the police relied upon to prepare the applications for the search warrants to open the packages. In fact, both Gregory Armstrong and Cora Ashley were specifically referenced in the search warrant affidavits which are incorporated by reference.

Upon issuance of the search warrants, the packages were opened and found to contain 6 kilos and 5 kilos of cocaine respectively wrapped in Dorito bags. Plans were then made to conduct a controlled delivery of the subject package to 1716 Sumac Street on Monday, December 6, 2004.

7

B.     *Officer Mark Steele*

City of McKeesport Officer Mark Steele ("Steele")[5] testified that he arrested Armstrong on December 6, 2004. On that day, he and his partner, J. Kaminski, from the Pennsylvania Attorney General's office were assigned to surveillance of the front door of Armstrong's house on Grover Street in McKeesport. They were sitting in a maroon Ford Taurus parked on an intersecting street. They utilized binoculars in surveilling Armstrong and James Jones ("Jones").

Through radio contact that morning, Steele knew that the subject package had been delivered to the front porch of 1716 Sumac Street and that a black Ford F-150 truck driven by Armstrong had passed by the front of 1716 Sumac Street approximately twenty (20) minutes after the package was delivered. Steele then watched the black truck park in front of Armstrong's house and he observed Armstrong and Jones, the passenger, exit the truck and go into Armstrong's house. Steele knew and recognized both men from having been involved in patrols in McKeesport over the years. After a minute or so, Jones came back out of Armstrong's house, got into a blue Honda, and drove down and around the corner onto Sumac Street.

Approximately two minutes later, he received radio notification to "move in," that the Honda was behind Armstrong's house, the package had been opened and Jones was in custody. At the same time, Steele saw Armstrong come out of his house and was walking away

---

[5]     Officer Steele testified that he has been on the City of McKeeesport Police force for ten (10) years, and has been assigned to narcotics for the past three (3) years.

8

at a fast pace. Steele walked up to Armstrong and placed him under arrest as directed by the radio notification.

Prior to January 1, 2004, when Steele was transferred to narcotics, he worked patrol in McKeesport and he knew Armstrong because he would "loaf" on street corners; and Steele would always move him along. Steele also knew Jones from his days on patrol.

C.  *Trooper David Leiberum*

Consistent with his testimony at trial, Trooper Leiberum said that he owned and lived in a home across the street from 1716 Sumac Street and that he had had previous contacts with Armstrong who had expressed an interest in purchasing 1716 Sumac Street. Cora Ashley also lived on Sumac Street in a house which Armstrong had purchased.

In December 2004, he assisted law enforcement officers with the controlled delivery of the subject Federal Express package to 1716 Sumac Street. He conveyed all the information he had on Armstrong to the police. When he initially met Armstrong, he thought that Armstrong was perhaps a real estate purchaser; however, the more he found out about Armstrong with his lifestyle and high-end cars, etc., the more he thought he fit the profile of someone involved in criminal activity.

D.  *Agent Brenda Sawyer ("Sawyer")*

Agent Brenda Sawyer of the Pennsylvania Attorney General's office testified that on the day that Armstrong was arrested, December 6, 2004, she was on surveillance of 1716

9

Sumac Street from Trooper Leiberum's house across the street. At the time she knew the following information, in addition or in supplement to facts set forth in the February 8th Memorandum Opinion:

* From her prior law enforcement experience in McKeesport, she knew and recognized Gregory Armstrong.

* Armstrong had been released from federal prison in December 2002 for a cocaine conviction. She also was aware that Armstrong was known to be involved in drug transactions and would "send other people to do drug transactions for him."

* After his release from federal prison, Armstrong was known to drive a Cadillac Escalade and/or Mercedes and it was rumored that he was building a new home in North Huntington. She also was aware that he had been purchasing properties in McKeesport.

* Armstrong was not employed, but was known to have a high lifestyle.

* Armstrong had been arrested in 1992, as a result of a prior state drug investigation case. At the time, she was a patrol officer for the McKeesport police department.

* In 1988, Jones and Armstrong had been co-arrestees and co-defendants in a criminal case. She also knew that Armstrong had been charged with intimidating a witness in Jones' murder trial.

* Jones and Armstrong were cousins. Jones was known as an enforcer for the family and would be called when muscle was needed.

* Cora Ashley was Jones' sister and Sawyer's sources had reported that Cora Ashley and Armstrong were very close, like a brother and sister.

10

\* Sawyer knew from Trooper Leiberum that Cora Ashley lived across the street from 1716 Sumac Street in a house which Armstrong had purchased.

\* Prior to December 2004, Sawyer had obtained information from confidential sources that Cora Ashley was a "mule" for Armstrong and that she was known to stash/ count money for Armstrong in her house.

\* Sharese Truesdale and Armstrong had children together. Sawyer knew that Truesdale had recently lived at 1315 Maple Street, McKeesport. However, on the day of the arrest, she believed that 1315 Maple was vacant as she had personally witnessed Truesdale moving into a house on Sumac Street some weeks before.

\* 1315 Maple Street was the address on the second suspect Federal Express package.

Sawyer testified that as early as December 4, 2004, Armstrong was noted as a suspect in the case. She immediately suspected him when she learned the intended destination of the subject Federal Express packages and she knew that Armstrong's cousin, Cora Ashley, lived across the street from 1716 Sumac Street. Of course, she knew the packages contained 23 pounds of cocaine, a drug-dealing quantity.

On the morning of December 6, 2004, the package was delivered to the front porch of 1716 Sumac Street at approximately 10:40 AM. A note on the door directed delivery placement of the package. Within fifteen (15) to twenty (20) minutes of the delivery, Armstrong and a passenger, whom she later learned via radio dispatch was Jones, drove by in a

11

black Ford F-150 truck that was registered to Cora Ashley.[6]  Armstrong looked toward the house at 1716 Sumac as he drove by.  Between three to five minutes after Armstrong drove past 1716 Sumac Street, she learned that Armstrong had parked the truck in front of his house on Grover Street.  A minute or so later, she heard on the radio that Jones was leaving Armstrong's house and almost simultaneously, she observed Cora Ashley come outside of her house and walk over to stand directly in front of the house at 1716 Sumac Street.  Sawyer testified that the timing was such that she believed a phone call had been made to Cora Ashley regarding the package and that Cora Ashley was sent to be a "look out" as "part of the plan."

       Jones arrived on Sumac Street in a blue Honda a moment later, parked in front of 1716 Sumac Street, got out and spoke to Cora Ashley and then retrieved the package from the front porch of 1716 Sumac Street.  He put the package in the back seat and drove away.  Moments later the alarm sounded indicating that the package had been opened and the officers of the surveillance team closed in on Jones who was in the alley behind Armstrong's house.  The blue Honda was parked in the alley and the package was found in the trunk.  Jones was arrested in the alley.  Sawyer testified that she found this to be suspicious because usually a person would park in front of a house, not in the rear.

       Sawyer testified that she had probable cause to arrest Armstrong on December 6, 2004.  Although she did not have video, an informant, or any direct evidence, she had prior

---

[6] Sawyer testified that she was very surprised to see Armstrong driving the truck because he was known to drive expensive cars and she had never seen him drive this truck before.

12

existing knowledge that Armstrong was a large drug dealer, the intended delivery was very close to his house, she saw Armstrong and Jones drive by 1716 Sumac Street, and she personally saw Cora Ashley acting as a "lookout."

## CONCLUSION

The instant record reflects that at the moment Armstrong was arrested, police officers were aware of the following information: (i) that Armstrong was known to be involved in drug trafficking; (ii) that police had observed Armstrong and a passenger, later identified as Jones, drive by 1716 Sumac Street, within twenty minutes of the subject package of cocaine being delivered to the front porch of that vacant house; (iii) that Jones and Cora Ashley were relatives and close allies of Armstrong; (iv) that Cora Ashley was known to stash drugs and money for Armstrong at her house; (v) that Cora Ashley was observed as a "lookout" on the sidewalk in front of 1716 Sumac Street minutes after Armstrong drove by; (vi) that Cora Ashley and Jones were observed talking together in front of 1716 Sumac Street immediately prior to Jones retrieving the package; (vii) that Jones was observed retrieving the subject package from the front porch of 1716 Sumac Street and placing it in his car; (viii) that the package had been opened; (ix) that Jones parked his car in the alley behind right Armstrong's house; (x) that Jones had been arrested in the alley directly behind Armstrong's house; and (xi) that Armstrong was leaving his home as Jones was being arrested.

In sum, given the totality of the circumstances, including Armstrong's actions on the day of arrest, as well as the actions of his associates, the government agents had a reasonable

13

basis to believe that Armstrong was involved in a drug-related transaction. The Court finds and rules that it was quite reasonable for the government agents to infer, based on prior information and the actions of Armstrong, Jones, and Cora Ashley on the morning of December 6, 2004, that Armstrong was involved in a felony criminal drug transaction which justified his immediate arrest.

Even if the Court were to assume, *arguendo,* that each of Armstrong's actions was susceptible of an innocent explanation, Armstrong's argument would nevertheless fail in light of the totality of the circumstances present here. There were far too many interrelated factors, which "fell into place," to have been the result of pure coincidence. *Belle,* 593 F.2d at 498.

Accordingly, the Court is satisfied that the government agents had probable cause to place Armstrong under arrest on December 6, 2004.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 04cr313-02 |
| | ) | |
| GREGORY ARMSTRONG | ) | |

**ORDER OF COURT**

AND NOW, 18th day of September, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the Motion to Suppress filed by Defendant is **DENIED**. The Judgment of Conviction entered February 14, 2006, is affirmed and remains in effect.

It is further **ORDERED** that sentencing of Defendant is scheduled on **Wednesday, October 4, 2006, at 11:00 A.M.** in Courtroom 6C before Judge Terrence F. McVerry.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Bruce J. Teitelbaum,
Assistant U.S. Attorney
Email: bruce.teitelbaum@usdoj.gov

Soo C. Song,
Assistant U.S. Attorney
Email: soo.song@usdoj.gov

Gary B. Zimmerman, Esquire
Email: garybzim@aol.com

U.S. Probation Office

U.S. Marshal